PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* WILLIAM S. DUELL, Defendant and Appellant.

No. 3816.   Argued January 17, 1930.—Decided May 26, 1931.

*Henry G. Molina* for appellant.   *R. A. Gómez* for appellee.

Mr. Justice Aldrey delivered the opinion of the Court.

William S. Duell appeals from a judgment whereby he was sentenced to six months' imprisonment for a violation of section 328 of the Penal Code, as amended in 1916, on a charge of having, through gross negligence or carelessness, suffered or caused a "Mercedes" automobile, driven by him at a certain time and place, to collide with a "Chevrolet" automobile, thereby causing the death of José María Tirado.

Two grounds are urged by him in support of his appeal: First, that the lower court erred in denying his motion for a nonsuit; second, that it also erred in convicting him, as he was not guilty of any public offense under the evidence.

After the trial court had overruled his motion for a nonsuit the appellant introduced evidence and thereby waived his right to have such ruling reviewed on appeal. *People* v. *Alvarado,* 19 P.R.R. 827; *People* v. *González et al.,* 24 P.R.R. 667, and *People* v. *Ojeda,* 26 P.R.R. 392. We shall, therefore, consider all the evidence introduced at the trial in order to determine whether the second error assigned was committed.

A "Mercedes" automobile was being driven by appellant shortly after midnight on a certain day along the road from San Juan to Río Piedras, and upon reaching Stop 32 of the electric car line it collided with a "Chevrolet" automobile which stood on the right-hand side of the road, looking towards Río Piedras. As a result of the accident, José María Tirado was killed and Jorge Luis Rivera had his face injured.

Jorge Luis Rivera testified that he and José María Tirado had gone out that night for a drive in the "Chevrolet" and, while on their way to Río Piedras, they stopped their car near Stop 30 in order to fix the rear light that was not working well, so as to avoid a fine; that they placed the vehicle on the right side of the road leading to Río Piedras, almost at right angles to the highway, the front wheels rest-

ing on the footpath of the road and the rear wheels near the ditch and trolley-car track which is close by; that on the right side of the automobile as it stood there was a mango tree and then another in the same direction towards Río Piedras; that the place was clear as it was lighted by two electric lamps, one on the road and another on the electric-car track; that when he and Tirado got out of the "Chevrolet" the front lights of the car were on; that he did no hear any horn nor see the lights of another car, but almost immediately after leaving their car another automobile coming up from San Juan struck the "Chevrolet" and he knew no more afterwards as he was unconscious; that two or three days later he went with the municipal judge to the same place and saw the "Chevrolet" facing the road, on the other side of the tree.

Juan Martínez, a night watchman in the district, testified that he was the first to arrive at the place of the accident, which was later reached by an "Oakland" car and by another automobile bearing Mr. Izquierdo; that he was in front of Panzardi's house, situated between Stop 30 and Río Piedras, and saw a car which stopped at Stop 30, some three feet inside the road and with its lights on, from which two boys alighted, and that shortly thereafter another car came up from the direction of San Juan "driven at too excessive speed" and collided with the standing "Chevrolet" car; that the car causing the collision, a "Mercedes," came to a stop about five or six yards past; that the place in question was lighted by two electric lamps and that he went to fetch a policeman and returned shortly thereafter with Juan A. Lebrón, who took the injured men to the Río Piedras Hospital; that after the collision the "Chevrolet" automobile was lying on the railway track past the mango tree and that, with the help of the policeman, he pushed it forward so as not to obstruct the passage of the electric cars; and that the tree was scraped.

Policeman Juan A. Lebrón testified that the "Mercedes"

car stood some six or eight meters away; that Tirado lay under the rear bumper, and that the mango tree was scraped.

Attorney Benito Sánchez lives almost in front of said place, and he testified that there the light is clear. Mr. Rafael Izquierdo, who reached the place of the occurrence shortly after the accident, testified that he found the "Chevrolet" car with its front lights on.

According to the expert mechanic, Felipe Cuevas, the "Chevrolet" car was struck a heavy blow on the right-rear portion of the body; the left mudguard was slightly indented; the right wheel broken; the right mudguard was also heavily indented and the right running board somewhat out of shape, the glass also being damaged. He did not see the "Mercedes" car.

Another expert mechanic, Antonio Lugo, saw both cars and testified that the "Chevrolet" had the right-rear wheel broken to pieces, which indicated a most severe impact; the bumper in the left-rear side was torn away and so was the removable rim carried in the rear box; he thinks that upon being struck on its left side the "Chevrolet" skidded sideways on the road, as revealed by the car; that the right running board had a portion of it bent downward; that the end of the chassis was damaged and the bumper and rim touched the ground; that on the right-hand running board and right side of the hood there appeared signs of a collision against the mango tree which stood there; that the right-front portion had also been struck and was somewhat loose. Taking into account that the "Mercedes" car is made of the best material that can be obtained, is a heavy car and very strong, with laminated steel mudguards, four brakes, best finish and well built, and can be stopped, by applying the brakes, at not more than five or six meters while going at 50 or 60 miles; and also taking into consideration that the "Chevrolet" is a very light car and its mudguards are made of common tin-plate, the expert reached the conclusion that the collision must have been a very violent one, because

from the shape of the rear bumper of the "Chevrolet" which is built almost like a half circle, and from the fact that at the place where it must have been struck to be broken it is very strong, it was apparent to him that the collision must have been very violent. He also stated that the "Mercedes" has two accelerators, one for speeding up to 60 miles and another up to 120 miles; that the speed can be increased up to 90 miles; that it is a heavy car, and that while going at sixty miles anyone would think that he is not going at more than twenty; that in heavy cars one is not aware of the speed even though traveling at fifty or sixty miles an hour; and that such a violent collision must have been caused by the "Mercedes" going at from forty to fifty miles an hour at least. That the tip of the right mudguard of the "Mercedes" was bent and the right bumper fell from the blow, the radiator showing a light knock.

Such was, in short, the evidence introduced by the prosecution at the trial.

The appellant testified that that night he went to a party and at twelve o'clock he was taking two ladies to Caguas, from where he had to return to a house on the Río Piedras-Carolina road; that he was talking to the lady occupying the front seat but that he was looking ahead; that the "Mercedes" has three sets of lights and he was using the double-dim set which does not give as much light as the full lights, and in the court-room he estimated the distance thus: "from here to the end of that table"; that he suddenly saw the "Chevrolet" some ten feet away when within the radius of its lights and he had scarcely time to turn the steering wheel and apply the brakes, and could not sound the horn; that he collided half sideways and stopped the "Mercedes" at a very short distance; that the place was dark and the "Chevrolet" had no lights on and stood obliquely with its front part nearer to San Juan; that he was driving moderately at from 35 to 40 miles an hour; that the "Mercedes" struck the rear mudguard of the "Chevrolet" and

caused the latter car to turn round completely and face the road; and that he stopped the "Mercedes" at 40 feet.

The other evidence of the appellant tended to show that the place of the accident was dark; · that the night watchman could not have seen from in front of the house of Panzardi what he said he saw; and by the testimony of the lady who occupied the front seat of the "Mercedes", and that of the other person who drove the "Oakland" which arrived afterwards and who had been with them at the party, he tried to show that the "Mercedes" was going at 25 miles per hour; that the "Chevrolet" had its front part towards San Juan and its rear within the road, and its lights were out. These two witnesses, who testified at the trial that the "Mercedes" was traveling at 25 miles per hour, admitted having stated in writing that the "Mercedes" was going at the rate of 30 miles an hour. An expert witness testified for the defendant that most probably the driver of the "Mercedes" failed to see the "Chevrolet," that he struck it from the rear, and that the impact must have been hard. In the course of the trial almost all the witnesses demonstrated before the court on a table, by means of a note book, the position of the "Chevrolet"; a view of the premises was taken, but the judge failed at the trial to state what he saw; and photographs and a plan were introduced.

The foregoing is a summary of the substantial portion of the evidence, the transcript of which covers 330 pages.

As may be seen, the evidence was partly conflicting and the court adjusted the conflict against the appellant and we fail to see that it erred in so doing, the more so since many of the witnesses indicated distances before the court by pointing out certain places in the courtroom without such distances being specified in measures in the transcript of the evidence. The same thing occurred almost every time they attempted to demonstrate before the court the position of the "Chevrolet" by means of a notebook as representing the automobile.

Certain facts have been admitted by the appellant; for instance, that the "Mercedes" driven by him collided with the "Chevrolet" which was standing on the right side of the road; that Tirado died as a result of the collision; that the place was dark and, as he says, his car's best lights were not on; that he did not see the "Chevrolet" until some ten feet away from it when it came within the radius of the lights that were on at the time; that he was driving at 35 or 40 miles an hour equivalent to 56 or 64 kilometers, in excess of the 48 kilometers which the statute fixes as *prima facie* evidence that a vehicle is being driven without proper care; and that he did not have time to sound the horn. There are other facts that are very significant in themselves as, for instance, that the impact must have occurred while the "Mercedes" was going at great speed, 60 miles or at least 40 or 50 miles, as testified by the expert mechanic, Lugo, such speed being required to cause the "Chevrolet" to be moved from its position and made to turn around the mango tree nearby, and to have suffered such great damage.

We find that the evidence as a whole is sufficient to support the judgment of conviction entered in this case, and that the same must be affirmed.